# Richmond.

## George R. Abel and Louis Abel v. Luther D. Smith et als.

September 27, 1928.

The opinion states the case.

*John W. Rust*, for the plaintiffs in error.

*A. D. Smith* and *Oscar C. Thomas*, for the defendants in error.

CRUMP, P., delivered the opinion of the court.

On August 27, 1926, the plaintiffs in error, George R. Abel and Lois Abel, filed a petition in foreign attachment against Luther D. Smith and his wife, in which it was alleged that the non-resident defendants were indebted to the plaintiffs in the sum of $2,516.90. The petition also alleged that there was in the hands of E. P. Harrison, who was made co-defendant, a note for $3,000.00, made by certain parties, payable to the principal defendants, Smith and wife, on which note there was still due the sum of about $2,100.00; that this $3,000.00 note was in the possession of the co-defendant, Harrison, as collateral, securing the payment of a note made by Smith and wife, on which latter note there was due only about $70.00; that Harrison, co-defendant, had purchased the note made by Smith and wife and taken an assignment of that note from the holder thereof, and had so acquired possession of the $3,000.00 note, payable to Smith and wife, which had been pledged as collateral to secure the note made by Smith and wife. On the same day attachment was issued and served upon Mr. Harrison, a res'dent of Fairfax county, the sheriff returning a levy upon the $3,000.00 note, payable to Smith and wife as their property.

The principal defendants under a special appearance filed two pleas to the jurisdiction of the court, in the nature of pleas in abatement. One of these pleas was based upon an allegation that the $3,000.00 note, attached in the hands of the co-defendant, was a chose in action arising out of an indebtedness created and existing in the District of Columbia between parties residing there and not in Virginia, and that the real situs of the property attached under the circumstances was in the District of Columbia, and not within the State of Virginia. The other plea alleged that the $3,000.00 note

levied upon as property of the principal defendants was fraudulently and by collusion between the plaintiffs and other persons brought within the jurisdiction of the court improperly, for the purpose of attempting to give the court jurisdiction, and, therefore, the attachment was sued out illegally and collusively in order to create a jurisdiction which otherwise did not exist. Upon a hearing on these two pleas before the trial court, the attachment proceeding was dismissed, upon the ground that the note attached was executed, delivered and payable in the District of Columbia, and was simply an evidence of debt created and existing in the district, and was not the debt itself; the court further holding that the evidence was not sufficient to show illegal collusion on the part of the plaintiffs and the co-defendant to secure the jurisdiction of the court.

With this brief statement of the case as brought up to this court, the learned counsel have argued both questions arising in the case at length. The question of the jurisdiction of a court over a debt arising and existing between parties both of whom are non-residents of the State in which an attachment is issued is one of considerable interest, and apparently one upon which the authorities are not in harmony.

The principal defendants, the defendants in error, insist that the evidence in the record is ample to show that there was a collusion between the plaintiffs and the co-defendant and the holder of the note in the District of Columbia to bring the note into the State of Virginia and within the jurisdiction of the trial court for no other purpose than to give that court jurisdiction; and that the arrangement under which that was done was an abuse of the process of the court, and a wrongful and illegal means of endeavoring to create a jurisdiction which otherwise did not exist.

In their petition for a writ of error the plaintiffs give the following account of the manner in which the $3,000.00 note was acquired and brought within the jurisdiction of the court:

"The plaintiffs ascertained that one A. D. Sartwell, who was an auditor in the Income Tax Service, a branch of the government, in which the said George R. Abel was also employed, was the owner of a certain note made and signed by the said Luther D. Smith and Sarah E. Smith, his wife, to which note there was attached as collateral to secure the payment of the same a note for $3,000.00 dated July 7, 1924, payable to Daniel L. Smith and Sarah E. Smith and signed by Harry B. Knee and Eva Knee, the said note having been executed and delivered in the city of Washington, D. C., and secured by a deed of trust on certain lots in said city and district, the said note being a promissory negotiable note, payable in monthly installments and endorsed by Daniel L. Smith and Sarah E. Smith. The said George R. Abel, who for a number of years has been and is a resident of Virginia, requested a friend of his, Mr. E. P. Harrison, who resides at Falls Church, Fairfax county, Virginia, to purchase the said note of the said Daniel L. Smith and Sarah E. Smith to which note was attached the $3,000.00 note signed by said Harry B. Knee and Eva Knee, payable to Daniel L. Smith and Sarah E. Smith and by them endorsed as collateral security for the payment of the said Smith note, and the said E. P. Harrison at the request of the said George R. Abel did purchase the said note with the collateral thereto attached, paying for the same about $70.00, which was the full amount due on said note, and after purchasing the said note he then brought the said note and the collateral note thereto attached for $3,000.00 upon which there was a balance due August 2, 1928, of $2,155.94 into the

county of Fairfax, Virginia, and the said plaintiffs imme-diately filed their petition and attached the said $3,000.00 note in the possession of the said E. P. Harrison in Fairfax county, Virginia, on August 27, 1926, and made the said E. P. Harrison a co-defendant to the said petition, the copies of the said $3,000.00 note, the attachment and the service of the same upon the said E. P. Harrison are copied in the record."

The non-resident defendants took the depositions of Mr. Sartwell and of the co-defendant Harrison in the city of Washington. Mr. Sartwell testified that he resided in Washington and he had acquired the note of Smith and wife to which was attached, as collateral, the $3,000.00 note in issue; that he and Mr. Abel had agreed between themselves that he would turn that note over to Mr. Harrison, in order to get it into Virginia, where it could be attached; that at the time of the transfer of Smith's note to Mr. Harrison, together with the collateral, there was due by Smith on the original principal note approximately $70.00. Mr. Sartwell further testified that Mr. Harrison bought the note at the instance of Mr. Abel and himself, and that he (Sartwell) had an interest in assisting Mr. Abel in effecting a removal of the collateral note to Virginia, so that it could be attached, because he had made a loan to Mr. Abel and Mr. Abel would, therefore, if he made a collection from the Smiths, be more readily able to pay him. Mr. Harrison testified that he resided at Falls Church, Virginia, and his answer to one question was: "I bought the note at the instance of Mr. Abel, in order to get it into Virginia, so that the collateral note might be attached;" that the assignment to him took place on August 26th and the attachment was issued and served on the following day, August 27th. The collateral note payable to Smith and wife, the subject of the attach-

ment here, was executed in the city of Washington by the makers, who were residents at the time of that city (and remained residents of the District of Columbia), on July 7, 1924, in the sum of $3,000.00, payable in monthly installments of $40.00, and the note bears endorsements of numerous monthly payments up to August 2, 1926, reducing the amount due on the note at that time to $2,155.24. This note was secured upon real estate. At the time of the transactions in question the note, having a value of more than $2,100.00, was held as collateral for a debt of only about $70.00, and the debt was probably extinguished by payments to Mr. Harrison, under the terms of the collateral note, in October and November.

The failure of the trial court to sustain the plea to the jurisdiction on the ground that the plaintiff had entered into collusion with other parties to give the court jurisdiction, and, therefore, the court could not entertain the case, but should dismiss it, was argued as cross error by the defendants in error, and if the judgment of the trial court should be sustained upon the ground that this position of the defendants in error is sound, then we need not inquire into or pass upon the ruling of the trial court on the other plea.

In our opinion the method employed by the plaintiff to give the court jurisdiction by making an arrangement with a friend to bring property out of another jurisdiction into Virginia, in order that there might be attachment, is under the circumstances of this case an evasion of the law and an improper use of the attachment process, and should not meet with the approval of the court.

It is fundamental in Virginia that when an attachment is sought upon the ground of non-residence of the defendant no Virginia court has jurisdiction,.

unless there is personal service or appearance, otherwise than by the existence of property belonging to the non-resident within the jurisdiction of the court. In other words, it is a proceeding *in rem*, and the jurisdiction of the court to proceed at all depends entirely upon its having acquired jurisdiction over the *res*. In such a case, if the jurisdiction over the property arises out of any device, or stratagem, or arrangement by the plaintiff by which the property is brought from a foreign State into the jurisdiction of the home court solely to give that court jurisdiction, then the defense may be made that the jurisdiction was unfairly and illegally procured.

The principles of law relative to cases of this character are well settled. Under our present attachment statutes when the basis of the attachment rests entirely upon the non-residence of the defendant, the co-defendant is practically in the position of a garnishee, section 6398 of the Virginia Code.

In the early case of *Timmons* v. *Garrison* (23 Tenn. 148), a negro slave belonging to the non-resident defendant was taken under a foreign attachment in Tennessee; the court found as a fact that the negro was decoyed from the possession of the defendant in the State of Georgia for the purpose of subjecting him to the attachment laws of Tennessee and was brought into the State of Tennessee by the procurement of the plaintiff with such intent; the court held on a plea in abatement that as the negro had been decoyed into the State of Tennessee for the purpose of giving the courts of Tennessee jurisdiction such attempt to attain jurisdiction was illegal and indefensible. See *Deyo* v. *Jennison*, 10 Allen (Mass.) 410; *Closson* v. *Morrison*, 47 N. H. 482, 93 Am. Dec. 459.

In 28 Corpus Juris, page 48, it is said:

"But acquisition of possession through collusion with plaintiff invalidates the garnishment proceedings, and the same is true where plaintiff fraudulently contributes to the bringing of the property into the hands of garnishee and thus within the jurisdiction of the court."

In 15 Corpus Juris, page 800, it is said:

"While a person who is found within the territorial jurisdiction of a court is subject to its jurisdiction, even though he was improperly brought or induced to come within the jurisdiction, it is well established as a general rule that in a civil case a court will not take jurisdiction based on a service of process on a defendant who was brought within the reach of its process wrongfully or fraudulently, or by deceit or any other improper device, provided, of course, the wrong or deceit is chargeable to plaintiff. This view is based not on a lack of jurisdiction, but on the view that it is improper for a court to exercise a jurisdiction so obtained."

In 1 Corpus Juris, at page 35, the author says:

"A plea in abatement or other proper objection to the jurisdiction is proper to raise objection to the court's jurisdiction of the person of defendant, or of his goods in the case of attachment, because of the fraudulent use or abuse of process."

The principles thus enunciated are universally recognized and stated in varying terms by the authorities and text writers. 1 Shinn on Attachments, page 389; 37 A. L. R. 1255.

In the case to which the note just referred to in 37 A. L. R. is appended the court held that the plaintiff's conduct did not constitute a device by which the property of the non-resident defendant was brought within the jurisdiction of foreign attachment, because

the non-resident had his agent in the State, who was handling the monies and the property of the non-resident defendant, and the money attached properly reached the hands of the agent in the usual course of business, although the plaintiff contributed to the means by which the agent acquired the money which was attached. In other words, in that case there was no property brought from a foreign jurisdiction within the home jurisdiction in order to give the home court jurisdiction over the *res;* for the court says: "In the present case the facts do not show that this plaintiff, by any word or conduct, induced the defendant to bring, or took an active part in bringing, its property within the jurisdiction of the court."

In Brown on Jurisdiction (2nd ed.), page 520, the author says:

"There is still another rule that applies, which is that where fraud or artifice has been used to bring either a person or his property within the jurisdiction of a foreign court, that court will not permit an advantage to be gained over such defendant. Wherever unlawful means are resorted to in order to gain an advantage over a party, such as enticing him within a foreign jurisdiction for the purpose of suit, or fraudulently procuring his property to be brought within the jurisdiction of a foreign court, the law, with great ease and versatility, will apply rules preventing wrong, and afford a remedy applicable to the case so as to prevent injury."

■ Applying these principles of law to the facts in the instant case, it is quite plain that the plaintiffs in the attachment suit by concert with others created a situation by which they were enabled to proceed in foreign attachment and serve the attachment process. The property at the time was in Washington, beyond

the reach of the jurisdiction of the court; the jurisdiction of the court would depend altogether upon its being in the State of Virginia. Then, the plaintiffs, through a friend of theirs, has the *res* brought into the State, for no other purpose than to sustain the attachment. The property was in the hands of a party in Washington, who was likewise interested in creating a situation where it could be attached in Virginia, and he joined in the previously concerted arrangement by which its removal to Virginia was effected. It is manifest that Mr. Harrison did not purchase the debt for which the note was collateral in the ordinary course of business, nor as an investment, but simply in order to assist the plaintiffs in removing the property from a foreign jurisdiction to Virginia. While the sale to Mr. Harrison was efficacious as a sale between the parties, because a consideration passed, still it should be taken as a fictitious sale in so far as we must regard it as having been made solely for the purpose of bringing the collateral note within the jurisdiction of the Virginia court. In our opinion, this was a device which comes within the principles of law forbidding the plaintiff to create a jurisdiction in his favor by inducing the defendant to come or procuring his property to be brought within the jurisdiction of the court. We do not think that such an arrangement as was made in this case should be upheld, in a case in which the sole ground upon which the jurisdiction of the court depends is the presence of the subject matter or *res* within the jurisdictional power of the court. We do not hold that every arrangement by which property may be made subject to garnishment comes within the inhibition of the law. No doubt if a garnishment process was issued under an execution and a party holding money or effects of the judgment debtor were to con-

tinue in possession of it at the instance of the judgment creditor and to the end that the garnishment process might be served upon him before parting with possession, such an arrangement would not fall under the ban of the law, because no jurisdictional question would be involved. In the instant case, however, what was done was done in order to give the court jurisdiction, and solely and altogether for that purpose. We see no valid distinction between the case in which the nonresident defendant is induced to come within the jurisdiction of the court and the instant case, in which the property was brought within the jurisdiction of the court unnaturally, not in any usual course, not casually found in the home jurisdiction, but purposely, by a method resting upon a preconcerted plan for the removal of the property. It is manifest that Mr. Harrison and others indulged the idea that they had a business right to do what was done, and in that sense there was no actual fraud in their conduct; but the result of the device resorted to by the combination between the plaintiffs, the co-defendant, and the holder of the note in Washington is not changed. In law it constituted an illegal collusion, of which the plaintiffs obtained the benefit, and it would be unfair to the non-resident defendants to allow them to retain the benefit of such undue advantage.

The learned counsel for the plaintiffs in error, while frankly admitting the existence of the facts, still insist that the conduct of the parties was legal and proper. It may be said, as was stated in one of the cases quoted from in Brown on Jurisdiction, at page 199, as follows:

"They concede that it smells somewhat of fraud. The only palliation which they are able to offer is the suggestion of a doubt whether it may not be considered a pious fraud in which the end justifies the means. We

do not think that it is entitled to even that small measure of charity."

It is urged on behalf of plaintiffs in error that the non-resident defendants by reason of the language in the plea, and because of a permission issued by the court to take depositions in Washington, should be held to have entered a general appearance and not a special appearance. The trial court, however, has certified in its bill of exception that the pleas were filed solely under a special appearance, and the entire hearing having manifestly taken place altogether as upon a special appearance, we do not think that there is any merit in this contention.

Upon the whole case, for the reasons stated, we are of opinion that the final judgment of the court in dismissing the attachment proceeding was correct and proper, and therefore the final judgment of the court will be affirmed.

*Judgment affirmed.*